Filed 5/14/15  P. v. Ortiz CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER LEE ORTIZ,<br><br>    Defendant and Appellant. | A139561<br><br>(San Francisco City and County Super. Ct. Nos. 217471, 219077) |

A jury convicted appellant Christopher Lee Ortiz of three counts of first degree burglary (Pen. Code, § 459).[1]  The trial court determined Ortiz's 1998 conviction for second degree felony "burglary of a habitation" in violation of Texas Penal Code section 30.02 (Texas burglary) qualified as a sentencing enhancing "strike" under the "Three Strikes" law (§§ 667, 667.5, 1170.12) and was a serious felony (§ 667, subd. (a)).  The court sentenced Ortiz to state prison.

Ortiz appeals, contending: (1) the court erred by admitting a July 9, 1997 affidavit for warrant of arrest and detention (affidavit) to establish the facts of his Texas burglary conviction; (2) without the affidavit, there was insufficient evidence the Texas burglary conviction qualified as a sentencing enhancing strike; and (3) the court erred by imposing a duplicate sentence on a burglary for which he had already been convicted and sentenced.  The People urge us to correct a sentencing error and modify the abstract of judgment.

---

[1]     Unless noted, all further statutory references are to the California Penal Code.

1

We conclude the affidavit contains inadmissible hearsay and the court prejudicially erred by admitting it. Because the affidavit was the only evidence establishing the Texas burglary was a strike under California law, there is insufficient evidence supporting the enhancement finding. We reverse the strike finding and decline to remand for retrial of the strike allegation. We remand for resentencing as described below.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of the offenses are not relevant to this appeal. We incorporate some procedural history from our prior opinion *in People v. Ortiz* (Oct. 15, 2013, A136117) [nonpub. opn.] (*Ortiz I*).)

### *Ortiz I*

In case number 217471, the People charged Ortiz with first degree burglary of residences on Tennessee and Kansas Streets in San Francisco (§ 459), felony receiving stolen property (§ 496, subd. (a)), and misdemeanor resisting, obstructing or delaying a peace officer (§ 148, subd. (a)(1)). The operative information also alleged Ortiz had suffered two prior felony convictions in Texas for which he had been imprisoned, and that one of the prior Texas convictions — the Texas burglary — qualified as a sentence enhancing strike under the Three Strikes law, and was a serious felony under section 667, subdivision (a)(1). (§§ 667, 667.5, 1170.12.) In May 2012, a jury convicted Ortiz of the Kansas Street burglary and found true the allegation the offense was first degree residential burglary. The jury found Ortiz not guilty of misdemeanor resisting, obstructing or delaying a peace officer and could not reach a verdict on the Tennessee Street burglary and the receiving stolen property charges.

The jury found the prior conviction allegations true. The prosecution did not introduce the affidavit into evidence, but the court determined the Texas burglary conviction qualified as a strike and sentenced Ortiz to state prison. In July 2012, Ortiz appealed, claiming the evidence was insufficient to establish his Texas burglary conviction qualified as an "enhancing strike under California law" because "the element

2

of 'habitation' is defined differently under California than under Texas law." (*Ortiz I, supra,* at p. 3.)

### Ortiz II

In November 2012, and while the appeal in *Ortiz I* was pending, the People charged Ortiz with first degree burglary of a residence on Baker Street in San Francisco (case No. 219077). The People later consolidated that charge with the Tennessee Street burglary and the receiving stolen property charges from *Ortiz I*. The operative first amended consolidated information alleged first degree residential burglary of Tennessee Street (§ 459), receiving stolen property (§ 496, subd. (a)), and first degree residential burglary of Baker Street (§ 459). The operative information also alleged a violent felony burglary allegation in connection with the Tennessee Street burglary (§ 667.5, subd. (c)(21)) and that Ortiz suffered two prior felony convictions in Texas. Finally, the operative information alleged the Texas burglary conviction — "the crime of burglary of a habitation, a felony" — qualified as a sentence enhancing strike under the "Three Strikes" law and was a serious felony under section 667, subdivision (a)(1). (§§ 667, 667.5, subd. (b), 1170.12.)

In January 2013, the jury found Ortiz guilty of the Tennessee and Baker Street burglaries and the prosecution dismissed the receiving stolen property charge. Ortiz waived jury trial on the prior conviction allegations. He urged the court to conclude the Texas burglary conviction was "not a strike under . . . section 459" because Texas Penal Code section 30.02 criminalizes the burglary of any building, but in California, first degree burglary in violation of section 459 "is only a strike when the building is inhabited." Ortiz also argued there was no evidence he entered the building with the intent to commit a felony, as required by section 459. The People argued the Texas burglary "qualifie[d] as a 'strike' for purposes of California law."

At a January 2013 bench trial on the prior conviction allegations, the prosecution introduced Exhibits 1 and 2, the "Texas version[s] of a [section] 969(b) packet." As relevant here, Exhibit 1 contained a judgment on plea of guilty before court; waiver of jury trial stating that in May 1998, Ortiz pled guilty to second degree felony "burglary of

3

a habitation" in violation of Texas Penal Code section 30.02 and was sentenced to five years in the Texas Department of Criminal Justice Institutional Division. According to the judgment, Ortiz pled guilty "to the charge in the indictment" and the court "having heard all the evidence for the State and for the defendant, and having heard argument of counsel for both sides, is of the opinion that there is sufficient evidence to substantiate a finding of guilty beyond any reasonable doubt[.]" The prosecution also introduced Exhibit 4 — the grand jury indictment — alleging Ortiz "intentionally and knowingly enter[ed] a habitation, without the effective consent of . . . the owner thereof, and therein attempted to commit and committed theft" on July 2, 1997.[2]

The prosecution also offered Exhibit 3, the affidavit. The prosecutor explained the document was "an official copy . . . It's been requested by the District Court of Travis County, Texas. It's stamped by the Court." The affidavit states Olga Reyes reported the following information to the "APD" on July 2, 1997: "Ms. Reyes was on her way to work when she stopped by her boyfriend's house . . . [¶] M[s]. Reyes entered the house thru [*sic*] the front door and found an unknown Hispanic male in the house carrying a plastic bag. The . . . male ran out the back door of the house . . . and left the area. [¶] . . . The owner of the residence is Jaime[ ] Suarez who came home and found that clothes, a pistol, stereo equipment and other items where [*sic*] missing from the house. [¶] Ms. Reyes viewed a photo lineup containing the photo of . . . Ortiz and she identified him as the person she saw inside the residence belonging to Jaime Suarez. Jaime Suarez does not know . . . Ortiz and did not give him permission to enter his residence and commit theft." The affidavit is dated July 9, 1997, seven days after the incident. At the bottom, an unidentified affiant states, "I have good reason to believe and do believe that . . . Ortiz . . . on or about the 2nd day of July, 1997, did commit the

---

[2]     Exhibit 1 also contained an August 1998 judgment revoking unadjudicated community supervision stating Ortiz had "pleaded TRUE" to the allegation he "intentionally and knowingly enter[ed] a habitation, without the effective consent of . . . the owner thereof, and therein attempted to commit and committed theft" on July 2, 1997.

4

offense of burglary of habitation." The affidavit is sworn before a Texas magistrate as providing probable cause for the issuance of a warrant for Ortiz's arrest.

Defense counsel objected to the affidavit, arguing it was not admissible as a "record of conviction" and contained inadmissible hearsay. The prosecutor disagreed, claiming the document was part of Ortiz's "prison packet from the Texas Department of Criminal Justice[,]" was part of Ortiz's record of conviction, and was admissible pursuant to section 969b. The prosecutor and the court discussed whether the affidavit was an original or a copy, and the prosecutor noted, "I think the original was provided to the Court in the defendant's previous trial, but . . . there's no best evidence rule in the [S]tate of California." The People also argued the affidavit was admissible under Evidence Code section 1280, the hearsay exception for official records. Defense counsel disagreed, contending the affidavit contained statements of a witness — Olga Reyes — that did not come within the official records hearsay exception.

The court repeatedly interrupted defense counsel as she tried to articulate her objections to the affidavit and — as Ortiz points out — made contradictory comments on the record. The court initially concluded the affidavit "is not the record of conviction. . . . The record of conviction is contained within People's 1 and also People's 2 [the section 969b packets]." Despite its conclusion that the affidavit was not part of the record of conviction, the court indicated it "intend[ed] to accept it into evidence." Later, the court concluded the affidavit *was* part of the record of conviction because it "reliably reflect[ed] the facts of the offense for which" Ortiz was convicted. The court, however, observed the affidavit "does have a second level of hearsay." Notwithstanding this observation, the court admitted the affidavit into evidence, but stated it "did not rely on" the affidavit. Inexplicably, the court found true the prior conviction allegations and determined the Texas burglary was a strike under California law.

### Sentencing in Ortiz II and Our Decision in Ortiz I

In April 2013, the court sentenced Ortiz to 13 years and 4 months in state prison, comprised of eight years on the Tennessee Street burglary, 32 months on the Baker Street burglary, and 32 months on the Kansas Street burglary from *Ortiz I*. The court sentenced

5

Ortiz to an additional five years for the section 667, subdivision (a)(1) strike — the Texas burglary — but stayed it pursuant to *People v. Aubrey* (1998) 65 Cal.App.4th 279. The court explained: "[p]reviously, the defendant was sentenced to 13 years, four months. That seems to be to be sufficient to punish him. However, I think it would be an abuse of discretion . . . to grant the defendant probation. . . ." The April 2013 sentencing minute order states the sentence on the Kansas Street burglary from *Ortiz I* was consecutive to the sentence imposed on the Tennessee and Baker Street burglaries. The April 2013 abstract of judgment also states: "[t]his sentence [is] consecutive to any sentence [Ortiz] is now serving."

In May 2013, the court held a hearing to "make it clear that" Ortiz's sentence on the Tennessee and Baker Street burglaries was "imposed concurrently with the sentence that was imposed earlier" on the Kansas Street burglary in *Ortiz I*. The court explained, "[m]y understanding of the law is that the earlier sentence [in *Ortiz I*] stands. . . . The defendant will serve that sentence. And he will concurrently serve the sentence that I impose. So when he is done with the first sentence, he will finish it out, if necessary, the sentence that I impose."

In response, defense counsel noted the court "had the jurisdiction to resentence" Ortiz and requested "the prior sentence" from *Ortiz I* "be vacated." The court responded, "Okay." When the clerk then asked the court to "clarify the record," the court responded: "I think the record is very clear that we made earlier." The May 2013 sentencing minute order states the sentence on the Tennessee and Baker Street burglaries is "concurrent to sentence imposed" in *Ortiz I* but the only abstract of judgment in the record — the April 2013 abstract of judgment — states: "[t]his sentence [is] consecutive to any sentence [defendant] is now serving." Ortiz appealed.

In October 2013, this court issued its opinion in *Ortiz I*. As stated above, Ortiz challenged the sufficiency of the evidence supporting the trial court's finding that the Texas burglary "met the elements of a strike conviction under California law." (*Ortiz I, supra,* at p. 1.) The Attorney General conceded "the evidence submitted by the prosecution . . . failed to show that the 'habitation' which Ortiz entered in Texas qualified

6

as an 'inhabited dwelling house' under California law." We reversed the strike finding and set it aside, and remanded the matter to the trial court for retrial on the strike. We stated, "[i]f the People elect not to retry the strike allegation, the court will resentence Ortiz accordingly." (*Id.* at p. 4.)

DISCUSSION

"California's 'Three Strikes' law . . . provides longer sentences for persons convicted of a felony who have been previously convicted of a violent felony, as defined in section 667.5, subdivision (c), or a serious felony, as defined in section 1192.7, subdivision (c). A prior conviction that qualifies as a violent or serious felony is commonly known as a 'strike.' [Citation.] A defendant convicted of a felony who has one or more strikes must be sentenced for the current offense under the Three Strikes law. . . . . When a person has been convicted of a serious felony, an additional five year prison term must be imposed for any prior conviction that qualifies as a serious felony. (§ 667, subd. (a)(1).)" (*People v. Rodriguez* (2004) 122 Cal.App.4th 121, 128 (*Rodriguez*).)

"A conviction in another jurisdiction qualifies as a strike if it contains all of the elements required for a crime to be deemed a serious or violent felony in this state. [Citations.] A conviction qualifies for the five-year enhancement under section 667, subdivision (a)(1) if it includes all the elements of a serious felony. The prosecution has the burden of proving beyond a reasonable doubt each element of a prior conviction used to enhance a defendant's sentence. [Citation.] In determining the truth of the existence of a prior felony conviction in another jurisdiction for purposes of the Three Strikes and other enhancement laws, 'the [trier of fact] may look to the entire record of the conviction to determine the substance of the prior foreign conviction; but when the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law.' [Citation.]" (*Rodriguez, supra,* 122 Cal.App.4th at pp. 128-129.)

"California law deems first degree burglary a serious felony for the purpose of sentencing enhancements. [Citations.] Burglary is defined as entry into a building or certain structures and vehicles 'with intent to commit grand or petit larceny or any

7

felony.' (§ 459.)  First degree burglary is defined as 'burglary of an inhabited dwelling house, . . . which is inhabited and designed for habitation, . . . or the inhabited portion of any other building. . . .'  (§ 460, subd. (a).)  Section 459 defines 'inhabited' as 'currently being used for dwelling purposes, whether occupied or not.'  '"[I]nhabited dwelling house" means a structure where people ordinarily live and which is currently being used for dwelling purposes.  [Citation.]'  [Citation.]"  (*Rodriquez, supra,* 122 Cal.App.4th at pp. 131-132.)  "Burglary of a structure that is not an 'inhabited dwelling house' is burglary of the second degree . . . and is not a serious felony for purposes of the Three Strikes and other sentencing enhancement laws."  (*Id.* at p. 132.)

In Texas, a person commits the crime of burglary when he, "without the effective consent of the owner . . . [¶] (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or [¶] (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or [¶] (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault."  (Tex. Pen. Code, § 30.02.)  Texas law defines "[h]abitation" as a structure "adapted for the overnight accommodations of persons. . ." and "[b]uilding" as "any enclosed structure intended for use or occupation as a habitation . . ."  (Tex. Pen. Code, § 30.01.)  "[U]nlike California law, Texas law does not require that the structure be occupied or currently used as a dwelling in order for it to be a habitation."  (*Rodriguez, supra,* 122 Cal.App.4th at p. 135.)

Here, the affidavit was the only evidence Ortiz entered an "inhabited dwelling house" with the intent to commit a felony as defined in sections 459 and 460.

I.

*The Affidavit Contains Inadmissible Hearsay and*
*the Court Erred by Admitting it*

Ortiz contends the court erred by admitting the affidavit because it contains inadmissible hearsay.  Evidence used to prove the substance of a prior conviction must be

8

part of the "record of conviction" and admissible under the rules of evidence.[3] (See *People v. Lewis* (1996) 44 Cal.App.4th 845, 851.) Even when a document is part of the record of conviction, it is not automatically admissible. "The normal rules of hearsay generally apply to evidence admitted as part of the record of conviction to show the conduct underlying the conviction. [Citation.]" (*People v. Woodell* (1998) 17 Cal.4th 448, 458; *People v. Myers* (1993) 5 Cal.4th 1193, 1201.) "Thus, a statement in the record of conviction that is offered to prove the truth of the matter stated must fall within an exception to the hearsay rule." (*People v. Thoma* (2007) 150 Cal.App.4th 1096, 1101 (*Thoma*).) We review the ruling admitting the affidavit for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)

The People contend the court properly admitted the affidavit under the official records hearsay exception in Evidence Code section 1280.[4] Evidence Code section 1280 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Even if we assume for the purposes of argument the affidavit was made by a public employee at or near the time of the incident, the People's argument fails. Under

---

[3] The California Supreme Court has not defined the term "record of conviction" and has declined to address "such questions as what items in the record of conviction are admissible and for what purpose[.]" (*People v. Guerrero* (1988) 44 Cal.3d 343, 356, fn. 1; *People v. Reed* (1996) 13 Cal.4th 217, 223.) In the trial court, Ortiz argued the affidavit was not part of the "record of conviction." He does not, however, make this argument in his appellate briefs. As a result, we assume, without deciding, the affidavit was part of the "record of conviction."

[4] We reject the People's argument — made for the first time at oral argument — that the affidavit was admissible as offered for a *nonhearsay* purpose. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 232, fn. 6.)

the official records exception to the hearsay rule, "the statements of those who prepare an official record concerning their personal observations as well as the observations of others who were acting pursuant to their official duty to observe and accurately report facts are admissible. . . . However, if the source of a statement is not a public employee with a duty to observe and report, the assumed trustworthiness is absent and the statement is inadmissible." (Simons, Cal. Evidence Manual (2015 ed.) § 2:67, p. 159 (Simons).)[5]

Two cases — *People v. Baeske* (1976) 58 Cal.App.3d 775 (*Baeske*) and *Alvarez, supra,* 100 Cal.App.4th 1190 — are instructive. In *Baeske*, a witness called the police and reported the license plate number of the robbers' car. (*Baeske, supra,* at pp. 779-780.) The trial court excluded a police report containing this information as inadmissible hearsay and the appellate court affirmed. The *Baeske* court concluded the police report did not come within the official records hearsay exception because the source of the information in the report "was not a public employee with any duty either to observe facts correctly or to report her observations accurately to the police department. The trial

---

[5]    Cases concerning the business records exception set forth in Evidence Code section 1271 are instructive because "[a]ny writing prepared by a public employee that qualifies as a business record would also qualify as an official record. The same showing of trustworthiness is required for both official and business records." (Simons, *supra,* § 2:67, p. 158; see also *Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 639-640, fn. 3 (*Zolin*).) The Law Revision Commission comment to the business records exception explains: "'"The chief foundation of the special reliability of business records is the requirement that they must be based upon the first-hand observation of someone whose job it is to know the facts recorded. . . . But if the evidence in the particular case discloses that the record was not based upon the report of an informant having the business duty to observe and report, then the record is not admissible under this exception, to show the truth of the matter reported to the recorder." [Citations.] [¶] Applying this standard, the cases have rejected a variety of business records on the ground that they were not based on the personal knowledge of the recorder *or of someone with a business duty to report to the recorder. Police accident and arrest reports are usually held inadmissible because they are based on the narrations of persons who have no business duty to report to the police.* [Citations.]'  (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 1271, pp. 315-316, italics added.)" (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1205, fn. 10, second italics added (*Alvarez*).)

10

court was correct, therefore, in ruling that the proffered police report was inadmissible hearsay." (*Id.* at p. 781.)

*Alvarez* reached a similar conclusion. There, plaintiffs in a wrongful death lawsuit against a restaurant sought to admit "LAPD's computer dispatch logs for 911 calls made from the restaurant for the 18 months preceding [the] murder." (*Alvarez, supra,* 100 Cal.App.4th at p. 1203.) "Plaintiffs also offered 10 other documents which set forth the contents of the 911 calls placed by third parties from the restaurant." A LAPD custodian of records "testified this data was input into the computer by public employees at the same time the calls are placed. Through these documents, plaintiffs sought to establish prior similar acts had occurred at the restaurant because in each phone call, the caller apparently reported a specific crime or act of violence then taking place. With that evidence, plaintiffs sought to argue [the] murder was foreseeable so that the restaurant had a duty to prevent its occurrence." (*Ibid.*)

The trial court excluded the evidence as inadmissible hearsay. (*Alvarez, supra,* 100 Cal.App.4th at p. 1204.) The appellate court affirmed, concluding "the individuals who placed the 911 calls had no duty to correctly observe and report facts. Consequently, the required indicia of trustworthiness is lacking, rendering the documents inadmissible hearsay." (*Id.* at p. 1206, fn. omitted; see also *People v. Hernandez* (1997) 55 Cal.App.4th 225, 240 (*Hernandez*) [police reports inadmissible under business records exception to hearsay rule because they were based on observations of witnesses with "no official duty to observe and report the relevant facts"].)

Here as in *Baeske* and *Alvarez*, there is no indication that Olga Reyes — the source of the statements in the affidavit — was a public employee with a duty to observe and report. While the affiant who signed the affidavit may have had such a duty to accurately report Reyes's statements, "such requirement does not transform [the affidavit] into competent, reliable, trustworthy evidence[.]" (*Hernandez, supra,* 55 Cal.App.4th at p. 240.) We conclude the affidavit does not come within the official records hearsay exception in Evidence Code section 1280 because it is based on the observations of a witness who had "no official duty to observe and report the relevant

11

facts." (*Hernandez, supra,* at p. 240; see also *People v. Ayers* (2005) 125 Cal.App.4th 988, 994.)

The People's reliance on *Lake v. Reed* (1997) 16 Cal.4th 448 (*Lake*) and *Zolin*, *supra,* 33 Cal.App.4th 634 does not alter our conclusion. In *Lake*, the California Supreme Court determined an unsworn police report fell within the official records hearsay exception because the officer "wrote the report within the scope of his duty as a public employee; the report was made near the time of the event in question; and the source of the information contained in the report—i.e., [the police officer]—and the method and time of preparation 'were such as to indicate its trustworthiness.' [Citation.]" (*Lake, supra,* at p. 461.) *Zolin* held a California Highway Patrol Officer's sworn report — which was based on a local police officer's personal observations — was admissible under the official records hearsay exception because the local police officer "was acting pursuant to his duty as a police officer to observe the facts and report them correctly. Accordingly, [the CHP officer's] sworn report qualified as an admissible public employee record even to the extent that it reported [the local police officer's] observations." (*Zolin, supra,* at p. 641.) In both *Lake* and *Zolin*, the source of the information in the reports was a public employee with an official duty to observe facts and accurately report them. Reyes had no such duty, and as a result, the People's reliance on these two cases is misplaced.

Because the affidavit contained inadmissible hearsay, the court abused its discretion by admitting it to prove the Texas burglary qualified as a strike offense. It is well settled "[t]he People must prove each element of an alleged sentence enhancement beyond reasonable doubt" and can only sustain their burden of showing that a prior offense qualified for an alleged sentencing enhancement by introducing into evidence record of prior conviction that meets all "'threshold requirements of admissibility,'" (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065-1066.) The affidavit was the only evidence establishing the Texas burglary was a strike under California law and, as a result, the enhancement finding is not supported by substantial evidence. (*Thoma, supra,*

12

150 Cal.App.4th at p. 1104.) Accordingly, the proper remedy is to strike the enhancement. (*People v. Williams* (1990) 222 Cal.App.3d 911, 918.)

Ortiz asks that we reverse the strike finding and preclude retrial. The People do not urge us to remand the matter for retrial. "'[R]etrial of a strike allegation is permissible where [as here] a trier of fact finds the allegation to be true, but an appellate court reverses that finding for insufficient evidence.' [Citation.] Just because retrial is permissible does not mean the People have an unqualified right to retrial." (*People v. Ledbetter* (2014) 222 Cal.App.4th 896, 903.) We decline to permit retrial. "Here, we are exercising our authority to preclude retrial because '[t]he futility and expense' of remand for the purpose of retrying the [Texas burglary] strike allegation'" — for the third time — "'militates against it.' [Citations.]" (*Id.* at p. 904; see also *People v. Moore* (2006) 39 Cal.4th 168, 176.)

## II.

### *The Matter Must Be Remanded for Resentencing*

As we have stated, the court sentenced Ortiz in April 2013 to 13 years and 4 months in state prison, comprised of eight years on the Tennessee Street burglary, 32 months on the Baker Street burglary, and 32 months on the Kansas Street burglary from *Ortiz I*. The court sentenced Ortiz to additional five years for the serious felony allegation (§ 667, subd. (a)(1)) but stayed the enhancement. The April 2013 sentencing minute order and abstract of judgment state the sentence on the Kansas Street burglary from *Ortiz I* is to be served consecutively to the sentence on the Tennessee and Baker Street burglaries. In May 2013, court held a hearing to "clarify" that the sentence on the Kansas Street burglary from *Ortiz I* was to be served concurrently with the sentence imposed on the Tennessee and Baker Street burglaries. At that hearing, the court appeared to vacate the sentence in *Ortiz I*. The May 2013 sentencing minute order states the sentence on the Tennessee and Baker Street burglaries is concurrent to sentence imposed in *Ortiz I*.

Both parties raise issues with respect to the sentencing. Ortiz contends the court erroneously imposed a duplicate sentence on the Kansas Street burglary conviction "for

13

which a judgment already existed." The People argue the court did not impose a duplicate punishment on the Kansas Street burglary conviction and claim Ortiz was "resentenced rather than duplicatively sentenced, given that the old sentence [from *Ortiz I*] was vacated." The People, however, argue the court erred by staying the five year enhancement pursuant to section 667, subdivision (a). The People urge us to modify the sentence to include the mandatory enhancement — in other words, to "add the 5-year prior" — and direct the trial court to prepare an amended abstract of judgment reflecting the correct sentence: 18 years and 4 months in state prison. Ortiz concedes the court erred "by failing to specify under what conditions the stay of the five year prior would be lifted" but argues "the proper remedy for such error is remand."

In light of our conclusion to reverse the strike finding for insufficient evidence, the People's argument with respect to the five year enhancement (§ 667, subd. (a)(1)) is moot. Remand for resentencing is proper. (*People v. Calderon* (1993) 20 Cal.App.4th 82, 88.) At the sentencing hearing, the court shall impose a single aggregate sentence for all three of Ortiz's burglary convictions, i.e., the Kansas, Tennessee, and Baker Street burglary convictions in case numbers 217471 and 219077. (See *People v. Venegas* (1994) 25 Cal.App.4th 1731, 1744; see also Couzens & Bigelow, California Three Strikes Sentencing (2014) Multiple Count and Multiple Case Sentencing § 8.4, p. 8-45 ["the last court to sentence the defendant must bring all of the prior prison sentences together with the current crime to create a single term of imprisonment for all cases"].)

### DISPOSITION

We reverse the strike finding and set it aside. We preclude retrial on the strike allegation. We remand the matter for resentencing on the Kansas, Tennessee, and Baker Street burglary convictions (case Nos. 217471, 219077).

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.